McKIE v. ROSE, Town Treasurer, et al.

(Circuit Court, D. Rhode Island. August 18, 1905.)

No. 2,729.

1. JUDGMENT—CONCLUSIVENESS—FACTS NECESSARY TO SUSTAIN JUDGMENT.

An island town was authorized by the Legislature to appropriate and use not exceeding a stated sum of money in the construction and operation of a steamboat, and to hire said money and issue its notes or bonds therefor. Subsequently plaintiff recovered a judgment against the town for a portion of the cost of such boat and its fittings. *Held*, that such judgment was conclusive that the contract sued on was within the authority conferred on the town, and valid, and that it was no defense to a petition for a writ of mandamus to compel the levy of a tax to pay the judgment, under the general statutes of the state providing therefor, that the town had issued its notes to the full amount authorized by the special act, and had used the proceeds; since, the power of the town to contract under the act being limited to such amount, and plaintiff's contract having been found to be within that limit, the town was bound to apply so much of such proceeds as was necessary to the payment of plaintiff's claim, and cannot avoid liability by a misuse or wrongful expenditure of the money.

2. MANDAMUS—PROCEEDING TO COMPEL LEVY OF TAX—PARTIES.

In proceedings for a writ of mandamus to compel the levy of a tax by a town to pay a judgment all of the officers whose action is necessary

to the levy of such tax may properly be joined as defendants, although some of them may not have refused to act.

Petition for Writ of Mandamus.

Carver & Blodgett, Charles F. Stearns, and Richard E. Lyman, for petitioner.

Charles A. Wilson, C. E. Champlin, and Walter H. Barney, for respondents.

BROWN, District Judge. This is a petition for a writ of mandamus to the town treasurer and other officers of the town of New Shoreham requiring them to take proper steps to call a town meeting for the ordering of a tax sufficient for the payment of a judgment against the town treasurer, in accordance with Gen. Laws R. I. 1896, c. 36, § 13. The answer of Rose, town treasurer, alleges that the judgment was rendered for a portion of the cost of a steamboat and its fittings, and refers to chapter 770, p. 71, Pub. Laws R. I. 1900–01, passed April 26, 1900, entitled "An act to authorize the town of New Shoreham to facilitate transportation to and from said town," and an act in amendment and addition thereto, chapter 893, p. 295, Pub. Laws 1900–01, passed March 22, 1901, as the only legal authority for the incurring by the town of the obligation upon which the judgment is based. The answer alleges that the town is not authorized to levy a tax to pay said judgment, or to apply the amount collected under any tax so levied to the payment of the judgment.

By chapter 770 the authority of the town "to aid in the purchase of or to construct a steamboat" was limited by the following provision:

"And said town is hereby authorized and empowered to appropriate and use for the purposes above mentioned a sum not exceeding fifty thousand dollars, and to hire said money for said purpose and to issue the notes or bonds of said town for said sum," etc.

Chapter 893 contains the following provision:

"And said town is hereby authorized and empowered to appropriate and use for the purposes above mentioned, and for operating said boats, a sum not exceeding thirty thousand dollars in addition to the sum of fifty thousand dollars authorized and appropriated by said town under section one of said act, and to hire said money for said purposes and to issue the notes or bonds of said town for said sums."

The answer avers that the respondent Rose, under the authority of said acts and of votes of town meetings and of the town council, has hired on the negotiable notes of the town of New Shoreham the full amount of $80,000, and avers that in making said appropriations and hiring said sums the town has exhausted its authority to raise money for the purposes set forth in chapters 770 and 893. The answer does not show what disposition has been made of the sums raised. It admits the refusal of the town treasurer to pay the judgment, and that he has not sufficient money of the town in his hands to pay the execution. The respondent contends that the allegation that the town has already raised the full amount authorized conclusively shows that the town has no power remaining to appro-

priate a further sum. In my opinion, the answer of the town treasurer is insufficient to show a lack of authority of the town to assess a tax for the payment of this judgment. Ordinarily, a judgment of this character is conclusive upon the question of the validity of the claim, and the answer sets forth no facts from which it can be held that the judgment was not based upon a contract authorized by law. Chapters 770 and 893 conferred upon the town authority to contract to the amount of $80,000. The power to contract, though limited in amount, imposed upon the contractor who furnished the steamboat no requirement that he should receive his payment from taxes imposed in a certain way. It was not agreed by him that he should receive his pay out of moneys raised by taxation. The town was to raise the money upon notes or bonds, and the money was to be used by the town for the purposes specified in the statute. Though the statutes impliedly conferred upon the town such power of taxation as was necessary to pay its noteholders or bondholders, the petitioner does not stand in the position of a noteholder or bondholder. In contracting he was entitled to rely upon the legal duty of the town to hold the moneys raised upon its notes until they should be paid out for the purposes specified in the statute. The various decisions cited to the effect that bondholders or warrant holders who have contracted to receive their money out of taxes raised in a certain way cannot enlarge their rights by a judgment are not in point. It appears that the town had the statutory right to contract to the amount of $80,000, that it had no legal right to contract in excess of that amount. If the town has raised the full amount authorized, and the contract upon which this judgment is based was a valid contract, then, if the town has not in its treasury the money to pay the contractor, it follows that the money has been lost, or paid out unlawfully for purposes not authorized.

The respondent invokes a presumption that the money which came into the hands of the town treasurer has been properly applied by him, and suggests that there is nothing to show that there have not been other just claims against the town of the same class as petitioner's which have as good a right to payment, or that the money raised has not been properly used to pay proper claims so as not to leave enough to meet the petitioner's claim. If the judgment is a valid judgment, based upon a contract made while the town had authority to make it, as we must assume, such a state of facts is legally impossible. The right to contract was exhausted when $80,000 of legal liabilities were incurred for the purposes specified in the act. All contracts in excess of that amount were ultra vires. If this judgment was based upon a valid contract, it is impossible that there should have been other legal contracts in excess of the sum authorized to be raised. Section 13 of chapter 36, General Laws of Rhode Island, makes express provision for the ordering of a tax to pay judgments. Neither section 21 nor 22 imposes upon the town any limitation in respect to this debt, which, as a debt, is based upon special statutory authority found in chapters 770 and 893.

The respondent cites Stryker v. Grand County, 77 Fed. 567, 23 C. C. A. 286, and King v. Grand County, 77 Fed. 583, 23 C. C. A.

348, to show that sections 13 and 14 of chapter 36 are inapplicable. Those cases held, in effect, that the holder of warrants payable in a mode provided by law could not change the mode of payment, or escape a limitation of his right to payment by procuring judgment on his warrants, and do not seem to me in point. Here the contractor has a right to payment out of the town treasury.

Were it necessary for the petitioner to rely solely upon chapters 770 and 893, it might well be argued that the power conferred upon the town to "appropriate and use" the sums for the purposes of the act was not exhausted until the town had in fact applied the money raised in the manner required by law. It is apparent from the existence of a valid and unpaid obligation that the legal authority to use the sum raised for the purposes authorized has not been exhausted. In many cases it has been held that a legislative act which deprives a creditor of the means of payment existing when the contract was made is invalid as impairing the constitutional obligation of the contract. Mobile v. Watson, 116 U. S. 289, 6 Sup. Ct. 398, 29 L. Ed. 620. The power and duty of the town to apply the moneys raised to the purposes of the act entered into the contract with the creditor. It was an obligation of the town authorized by law, and which bound it to the creditor, so that neither the act of the Legislature nor of the town officers could impair the obligation. Scotland County Court v. Hill, 140 U. S. 41, 11 Sup. Ct. 697, 35 L. Ed. 351. The obligation still exists. The answer is, in effect, that the money has been raised and is gone. Where we are not told. It appears nevertheless that such part of it as belonged to this creditor has not been received by him. Can it be said that the creditor, through the fault or misfortune of the town or its officers, is deprived of all remedy except an appeal to the Legislature? Assume that the creditor did agree to receive his pay from money raised upon notes, can the town defeat his right by using this money for other purposes? In Ralls County Court v. U. S., 105 U. S. 733, 26 L. Ed. 1220, it was said:

"The fact that money has once been raised by taxation to meet the payment, which has been lost, is no defense to this suit. The claim of the bond-holders continues until payment is actually made to them. If the funds are lost after collection, and before they are paid over, the loss falls on the county, and not the creditors."

See, also, East St. Louis v. Amy, 120 U. S. 604, 7 Sup. Ct. 739, 30 L. Ed. 798.

It was doubtless the intention of the Legislature, in limiting the amount that could be expended, to afford some protection to the taxpayers of the town. In holding the town liable for the payment of this judgment, and in deciding that a tax may be levied under the provisions of chapter 36, § 13, we do not hold that more than the sum of $80,000 can lawfully be used by the town for the purposes of the act, but merely that the judgment creditor may resort to section 13 to compel the payment to him of such portion of the sum of $80,-000 as should have been reserved by the town to pay its debt to this petitioner. The taxpayers cannot be protected by annulling the legal rights of the judgment creditor. They must seek protection

through proceedings for the recovery of sums expended without legal authority.

The propriety of joining as respondents town officers who have not refused the performance of any duty is questioned. This point seems to have been decided by the Circuit Court of Appeals of the Fifth Circuit in Marion County et al. v. Coler et al., 75 Fed. 352, 21 C. C. A. 392:

"If the plaintiffs were entitled to a mandamus to compel the levy and collection of taxes, they were certainly entitled to one which would set all the machinery necessary for the levy, assessment, and collection of taxes in motion."

See, also, Labette County Commission v. Moulton, 112 U. S. 217, 5 Sup. Ct. 108, 28 L. Ed. 698.

A peremptory writ may issue.